and Caterin Martinez-Alberto. At this time, would Attorney Schneider please introduce herself on the record to begin? Thank you. My name is Tina Schneider. I'm here for the defendant Caterin Martinez-Alberto. Ms. Martinez was convicted along with her co-defendant of participating in two drug conspiracies. With the court's permission, I'd like to concentrate on the third argument in our brief, that is the flawed jury instructions. The jury instructions here viewed as a whole were wrong. The district court did not convey the relevant legal principle that each defendant had to be separately considered. In fact, the district court did exactly the opposite, conveyed to the jury the notion that the two co-defendants were a unit. Counsel, as I recall, there was no request for such an instruction, and furthermore, there was no objection to such an instruction not being given. So we're here on plain error review. Is that correct? That is correct, Your Honor. All right. Take us through the steps, please, of plain error review. Certainly. So it was error here for the court to repeatedly and consistently refer to the defendants as a unit. It did so every single time it referred to the defendants, except for a single isolated instance relied upon by the government. The district court referred to the defendants as a unit in the context of instructing the jury on the presumption of innocence, proof beyond a reasonable doubt, the government's burden in the case, the indictment, the charges against the defendants, the definition of a conspiracy, the intent to join the conspiracy, the definition of knowingly, knowledge of the substance involved, and the specific quantity of drugs. Well, let me ask you about that. Isn't it true that those are standard instructions that apply to each of the defendants? Exactly, Your Honor. They're standard instructions that apply to each of the defendants. And when there's more than one defendant, the court cannot... Are you saying that your defendant was entitled to a different instruction on any of those points other than the standard instruction? I am contending that my client was entitled to a different instruction on every single one of those. Unburdened of proof? Yes, because unburdened of proof, the court referred to the defendants as a group. My client was entitled to have the court refer to the defendants in the singular and not together, because the message the judge gave the jury was the two codependents are a group. Well, there was two separate jury forms, is that correct? That is correct, Your Honor. And didn't the court go over the jury forms with reference to each defendant separately? The court went over the jury forms with the jury. However, the court prefaced its remarks by saying, here are the verdict forms, this is what you use to write down your decision. So the jury verdict forms themselves are not instructions. And in fact, the court told the jury, look, this is the last step. Once you've applied the instructions as I've given you to the facts as you find them, you write down your answers on these verdict forms. Of course, the judge didn't give the jury a verdict form that said, how do you find the defendants? But obviously, the court wouldn't do that. But to rely upon the verdict forms to undo all those references to the defendants as a group is misguided, I think. The verdict form was the last step. It wasn't itself an instruction. Do you have any case law with these facts? With these facts, no. We have case law saying that every defendant has a right to have her guilt or innocence individually determined. The right to have her considered separately from her co-defendants, that's the FIRO, a Supreme Court case. And this case has, this court has, I believe, referred to the FIRO itself in decisions. This case comes down to what you call that one throwaway line where court made clear that it was as to each individual defendant and whether the manner in which the court used the jury verdict forms, whether that's enough for us to find plain error occurred. Yes. So the one, what's interesting is this, on one side is 20 plus references to the defendants as a group. Did they do this? Did they know this? That kind of thing. As opposed to one, one single time where the court referred to each of them, but did so in the context of a sentence that also included them as a group. So there's that. Counsel, are you saying that the court's error was in not putting the terms each of before the word defendants and only using that each of formulation once? The court should have done that every single time. And that is the error that you are saying is plain? Yes. Yes. Ms. Snider, could this actually have helped the defendants, which might explain their counsel's silence? Because the jury could get the impression, if I'm following your thread, by the referring to both of them, that if they found either one of them innocent, they had to find the other innocent as well, because they both would not be guilty. So I think as to the co-defendant, it could have redounded to her benefit, but it definitely prejudiced my client because the evidence of the co-defendant's wrongdoing was more substantial and her role in the offense was greater, a point that the government conceded at the sentencing when it noted that, look, Ms. Martinez wasn't involved in the planning. You're not making a sufficiency challenge, are you? No. No, but here's an important point. We're not saying the evidence was insufficient, but the test under the fourth prong is, was the evidence overwhelming and essentially uncontroverted? And here, the evidence was not overwhelming. It was sufficient but somewhat equivocal. And in terms of whether it was contested, it was hotly contested. So under the third and fourth prongs of plain error review, isn't the burden on you to show that it likely would have made a difference? Yes. Yes. And I believe here it would have, given that the evidence against my client was, she was on the boat when it was seized, but we know that the drugs were so well hidden that even the drug-sniffing dog didn't find them. If I can just finish the thought. There was evidence from a cooperator that she was involved, but that cooperator had problems and there was no independent evidence linking her with the cooperator, as there was with the co-defendant, who was, there were photos of her with the cooperator. The texts that the government relied on were very ambiguous, that she was working, she wasn't in Puerto Rico, and she was rich. There was a suggestion that there was sex work also involved, and those texts could have referred to that. And then it comes down to a photo on her phone, and that photo, all the expert could say was it was taken by her phone on a certain date. There's no evidence that she took it, that she even viewed it on her phone, that she texted it out, no evidence at all that she knew it was on her phone. Even the government conceded whether she took it is different than whether it was on her phone. Thank you. Thank you, counsel. At this time, if appellant's counsel, attorney Matos DeJuan, could please introduce himself on the record to begin. You have a seven-minute argument, sir. Thank you. Your Honor, counsel, sister counsel, judges, may it please the court, my name is Juan Matos and I represent Alexandria Amdino. Now, sirs and ma'ams, I suffer a proposition that the district court erred in its analysis of whether Ms. Amdino was or was not a minor participant. As found in the brief, you will see that the court took errors in its analysis, errors in the evidence it considered which forced an error in the program that came out. For example, the court determined that Ms. Amdino was participating in the planning. When testimony brought during the trial by the cooperator was that she was not a participant. As a matter of fact, the planner was Codifen Andres Tomiranda, Figueroa Benjamin, and Copim Benjamin. The court determined that she participated in the meetings where plans were held. When testimony was that those meetings they spent the day drinking, playing dominoes. More specifically, and more to my concern, the court flat out refused to consider extremely relevant evidence as to what was her participation. During sentencing, excuse me, during the briefing stage, the defense and the government sentencing memo, the parties brought up the fact that she had done safety valve. During that safety valve interview, she contested the testimony of the cooperator saying, no, I wasn't in those planned meetings, no, I didn't pack those drugs. The government heard her testimony and still certified that she had complied with safety valve, which means that they held that what she said in the safety valve was truthful. Yet when the government tries to approach and discuss that during the sentencing, here's the position of the district court. I don't think I should consider what she admitted in her safety valve briefing to determine whether she or not participated, excuse me, to determine that she did not have a minor or minimal role. I think it's better thing to do would be to stick with what was a trial, the trial transcript. So the court, the district court specifically refused to consider what was said in the safety valve and what the government has certified that was truthful. Now, Was there an objection once the court made that determination? Yes, ma'am. A few days after the brief was filed in this case, the Supreme Court decided Concepcion v. United States, 142 Supreme Court 2389. In that case, at page 2404, the Supreme Court states, it follows under the court's sentence injurious prudence, and this is a first step act, but it equates first step sentencing with other kind of sentencing. District courts bear the standard obligation to explain their decision and demonstrate that they consider the parties' arguments. It is well established that the district court must thoroughly consider the parties' non-frivolous arguments before it. This is not a scenario in which the district court said, thank you for the information, but I don't believe it. Thank you for the information, but I'm going to go, I'm going to consider this, I'm going to consider the entire transcript, I'm going to consider these other factors, put them in my mashup, and reach this conclusion. The district court flat out refused to consider what happened and the safety valve. So are you saying that was a legal error, or are you saying the court abused its discretion? I will say that it's both. I will say that it's a legal error, the court refusing to consider that as one of the 3553 factors, because it specifically went to the consideration of her role in the offense, whether she would be receiving a minor participant or not. So Concepcion talks about the government having the ability to consider many different types of evidence or information. Not the government, the court. Pardon me? Not the government considering the district court. The district court has the discretion to consider many different types of information. Yes, ma'am. But you're saying that as a matter of law, the court had the obligation to consider this? I think that under Concepcion, the court is required to concede. It is well established that the district court must generally consider the parties' non-frivolous arguments before it. This was not a non-frivolous argument. The district court bases the decision on safety valve, excuse me, on minor participant, on her level of participation and testimony by the cooperator at trial. Yet when told, when attempted to be told, look, at safety valve, she denied that particular participation  Counsel, if I may, the district court considered all of the evidence and rejected the very arguments you're now making. Are you conceding it was no clear error and that your only argument left is because she represented to the government but not to the district court in sworn testimony during the safety valve that we are to disregard what happened at trial and the trial judge's evaluation of it? Judge Lynch, I would have to disagree with the premise of your analysis. Your premise is the district court analyzed Oh, it was a clear error. No, I don't think it is. Okay, if it wasn't clear error, then you are left with your argument as to the safety valve. How does the safety valve statement to the government undercut the district court's no error of fact as to her failure to meet her burden of proof as to being a minor role participant? Because the district court refused to hear the evidence. Okay, so that comes back to your saying as a matter of law, the district court must have considered that evidence. And suppose we reject that? Well, Judge, I'll look it back a bit. I think the district court was required to consider all non-freehold statements. Okay, you've made that point. Thank you. Not having done that was error in the analysis of the 3553 factors. Not having done that, I think that this court should remand the case for consideration of that. And then it reaches whatever decision it reaches. Thank you. Your time has expired. Yes, ma'am. Thank you. Thank you, Counsel. At this time, if Attorney Jacobson could introduce himself on the record to begin. Good morning, Your Honors. And may it please the Court, Jonathan Jacobson for the United States. Your Honors, there's sort of three brief points I'd like to make today concerning I guess the question is whether you'd like to hear from me on the instructional error or whether you'd like me to address issues beyond the instructional error in Ms. Martinez's brief. I can address all of those issues. But the central point that I intended to make today was that there was overwhelming evidence of Martinez's participation in the two conspiracies for which she was convicted, including corroborated cooperator testimony and highly incriminating text messages. Even if Martinez had been able to argue that the foot in one single piece of evidence, that the relevant photograph here were not hers, it would not have materially undermined the evidentiary weight and the evidentiary significance of that photo much less. No, no. Could you please go back? I thought you were going to address the instructional error argument. And are you conceding that there was error and it was plain error? No, Your Honor. We are not conceding that there was error and we are not conceding that there was plain error. With regard to the instructional error, first off, no objection, Judge Lynch, as you mentioned, was made to the absence of this instruction after a substantial charge conference and after all of these instructions were made, 20 plus of which the appellant is now contesting, no one ever said anything about whether these instructions improperly tied the two defendants together. So under the Clough case that we cited in our brief, it's actually waived. But even if this Court were to consider it on the plain error test, plain error, again, under Clough, is especially applicable and is an especially difficult standard to meet where the error is a jury instruction error and where it's not really core to the defense theory. Can I get a point of clarification, please? The Court handed out written jury instructions for the attorneys to consider beforehand. Is that correct? That's correct, Your Honor. Were the instructions as written, have the word they threw out? I believe, Your Honor, that the instructions as written, which appear on the docket, are effectively identical to the ones that were presented to the parties. I'd have to go back and confirm that. I'm not 100 percent certain that all of the instructions that were ultimately given were provided to the parties in advance before the charge conference. Because our case law does say that the Court should make clear that they're to consider the evidence against each of the defendants individually and come up with individual verdicts. I mean, that's clear from our case law. Well, Your Honor, I think in the instructions, although the appellant is pointing to numerous instructions that appear to suggest that the defendants were a single unit, there were many, many other instructions, besides even the one that we pointed out in our brief, that required separate consideration. For example, if you look in Volume 8, page 32, the Court stated, the presumption of innocence alone may be sufficient to raise a reasonable doubt and to require the acquittal of a defendant. The Court specifically stated it's a cardinal principle of our system of justice that everyone is presumed innocent unless and until his or her guilt is proven beyond a reasonable doubt, in addition to the instruction that was pointed out in the brief. And the Court didn't just separately read the two verdict forms, Your Honor. I believe it was Judge Thompson who had mentioned the two separate verdict forms. It didn't just read the two independent verdict forms. It specifically stated that there is one form for each defendant, and you need to go through each different form, and it walked through each form. If the defendants were to be considered collectively, there would be no need for two different verdict forms. And so, Your Honor, I just don't think it's reasonable that the jury made some determination that if it found Andino guilty, it had to find Martinez guilty. I think that's beyond speculative. I think it's not credible, Your Honors. And it's certainly not plain error to fail to include that instruction, particularly where there's not a single case that identifies a requirement to have that instruction, and where if the Court were to determine that that instruction were required, it would effectively be saying that every multi-defendant case requires that instruction as a matter of law, and it would be erroneous not to include it, a constitutional error. Your Honor, I think stepping, I don't know, I can continue on the instructional error. I can move on to some of the other issues. But in my view, the instructional error is, it's not plain. There's no error. It does not, it's not clear or obvious even if there were an error. It doesn't affect substantial rights, and it certainly doesn't call into question the integrity of the proceedings. Your Honors, with regard to Ms. Martinez's separate argument concerning the foot, I think it's pretty clear from the record what was proposed was simply for the appellant, Martinez, to stick her foot out in front of the jury and show them her foot, with no further testimony, no foundation to be laid, no demonstration, for example, that her foot in September of 2019 resembled her foot in November of 2017, two years prior. Isn't that a presumable inference the jury might draw? Well, Your Honor, I think not necessarily, because it is conceivable, for example, that the defendant might have gotten a tattoo on her foot, let's say, in the interim period. The government would be left with no ability to counteract that evidence. But you'd know that if there was a tattoo on the foot, then you'd know that. But the problem is, I mean, all the time, jurors look at something about a defendant, right? They hear a witness describe a defendant, and they look over at counsel's table, who's sitting next to them, and if the witness is describing someone with red hair and the defendant's hair is not red, jurors take note of that, right? That's correct, Your Honor. And so, but this ruling here would suggest the defendant has to sit there with a bag over her head. Well, I disagree with that, Your Honor, because this was being proposed as direct evidence that they were going to submit through testimony, not just a defendant sitting in a courtroom or a witness sitting in a courtroom. They wanted to bring this in, and the case law is pretty clear that they needed to establish a foundation in order to do that. In fact, even the in-wrinkle-weed treatise that they proposed— No, Your Honor. She needs to establish some foundation for that. For example, and this is in the Williams case that we cited— Foundation of what? Foundation— That that was her foot? Foundation beyond just that that was her foot, but that there was substantial similarity between what she's demonstrating today and what she's trying to replicate, which in this case would be what the situation was like in November of 2017. Well, how do you know that until you see the foot? I mean, you speculated there could be a tattoo on it. Well, then you make a point, but suppose there's nothing like that on the foot. Your Honor, I— It's just that the toes are aligned at a way different angle. Yeah, I understand the point, Your Honor, and even if ultimately the court determines that she didn't need to establish foundation, that she could, in fact, just show the jury her foot, which again is contrary even to the treatise that Martinez cited while she was discussing this with Judge Bessosa, even if that's the case, any—if there was error, in other words, that the display of the foot was conditioned on cross-examination, that error would be reviewed here under non-constitutional harmless error standard. No constitutional objection was raised, and even if, quite frankly, we were reviewing or this court were reviewing for harmless error beyond a reasonable doubt under Chapman, there is no question that this error would have been harmless beyond a reasonable doubt. Mr. Jacobson, another point of— Counsel—I'm sorry. Go ahead, Judge Thompson. Another point of clarification about the foot. Yes, Your Honor. Was there testimony from somebody that this was her foot in the picture? No. Beyond the fact that there was no testimony that this was her foot in the photo, the government never argued at any time that the foot in the photo, which is a fairly peripheral foot, was, in fact, the appellant's foot. In all of the three pages of closing argument— But was there—I mean, was there some—because I couldn't figure out what was going on with this argument. Was there some suggestion that that was her foot from somebody? No, Your Honor. There was no contention that it was her foot. The evidentiary significance of the photograph— So then what would have—you argued this in your brief. I couldn't figure out when I was done. What was the relevance of even her wanting to show her foot if nobody was suggesting that it was her foot? I think a fair read of what she wanted to do, Judge Thompson, is that she wanted to say there is a foot in this photograph. And I'm arguing, as Martinez is arguing, that I wasn't there, that I didn't take that photo, which she did argue in closing argument, that there was no proof that she had taken the photo. And it would tend to corroborate the notion that she didn't take the photo, I suppose, if this one foot were not hers, although it would not necessarily preclude her from being the photographer. Was this a selfie? This was not a selfie, Your Honor. This was a photograph of cocaine with logos taken at a time where the defendant was— where there's substantial corroborating evidence that the defendant was on a drug trafficking venture two months before she was arrested on a boat with logos on cocaine that matched the logos on the phone. That was the significance. That was the evidentiary value of the photo. But you wanted to put into evidence that it was her phone that took that picture, right? Yes, Your Honor. It was unequivocal evidence that it was her phone. All right. And so the only reason that it's relevant in this case that it was her phone is that suggests she took the picture. Not necessarily, Your Honor. Even if someone else had taken the picture, even if she had given the phone— Well, let's say it greatly diminishes the probability force of the evidence that the picture is on her phone if it were established that she didn't take the picture. Then she's got a much better defense than if it's clear she took the picture. I disagree, Your Honor, because the fact is there was substantial corroborating evidence placing her in St. Thomas on— for example, to just step out on that day, November 3, 2017, leading up to the photo on the 4th. She was texting with Andino about the trip. On the 4th, she's seen in photographs on the Black Wolf— Well, now you're just saying there's other evidence. But this piece of evidence, she's saying, I didn't take that picture, so you can't draw any inference that I was aware of it because you think I took the picture. Even though it's on my phone, I didn't take it. And she wants to corroborate that by saying, I can prove I didn't take it because that foot that is in the picture, if it were— a whole separate issue of whether you can even see a foot in this picture. But if it were clearly not her foot, that would substantiate her claim that she didn't take the picture. Again, not necessarily, Your Honor, because even if that foot belonged to someone else, from the angle of the photo, it's impossible to discern whether she could have taken the photo and captured someone else's foot. Isn't that your best argument? If you look at the photo, you can hardly even tell there's a foot. You just see something in the lower right-hand corner. Your Honor, I think that's correct. But ultimately, even if you assume it is a foot, and even if you assume it belonged to someone else, and even if you imagine a universe where she could prove and say to the jury unequivocally, that foot belongs to someone else, the error would have been harmless beyond a reasonable doubt. Did the defendant make a proffer of what the picture of her foot would look like? No, Your Honor. Well, then, there you go. I'm sorry, Your Honor. I mean, I think ultimately, even if you could assume— So how can we tell it's prejudicial? Well, you could tell it's prejudicial because if you assume the best imaginable outcome, that she could definitively say to the jury, it's not my foot, it would have made no difference, because we would still have made the exact same closing argument, which didn't depend on whether it was her foot. And she would have made essentially the same closing argument. I didn't take the photo. It would have been slightly bolstered by the fact that it's not my foot in the photo, but it wouldn't have eradicated the reasonableness of the inference that she was still in the room or that she had still taken the photo and captured someone else's foot. So the government's position is we should ignore the failure to make a proffer to put it on the record what it would have looked like had the picture been allowed. It's not that you need to ignore that, Your Honor. I think you can assume the best case outcome for her in assessing if, Your Honor, if Your Honors determine that there was an error, you can assume the best imaginable scenario for her, which is that she could argue that it was not her foot. That's an unusual argument for the government to be making. It's a pro-defendant argument. Why was the photo introduced? What was the government's theory of relevance? Your Honor, the photo was introduced because it was on Martinez's phone. It had cocaine in the photograph with insignia matching the insignia on the cocaine that was seized at the time of her arrest. It was taken on the night where there was corroborating evidence that she was engaged in a drug trafficking venture, and ultimately the government didn't rest on the notion at all that it was her foot. That's the evidentiary significance of the photo. Whether she took the photo or somebody else took the photo, the cocaine logos matched and there was other evidence she was on board. That's correct, Your Honors, and I think we need to step back from the photo, which is just one small piece of the puzzle of evidence, of incriminating evidence concerning Ms. Martinez. She was on a 28-foot boat with $2 million worth of cocaine at a time where there were dangerous sea conditions. Already, I think it's fair to say that the jury could be skeptical of the notion that she didn't know what was going on on the boat. A cooperator testified that he personally recruited her, that he was going to pay her $3,000, and he testified about a trip in June of 2017 that he had gone on with a drug trafficking venture that Martinez knew about that they had gone on to St. Thomas. It was a failed drug trafficking venture, but this is a conspiracy conviction. In January... Counsel, you've got less than 10 seconds. Is there anything else you want to tell us? No, Your Honors. I think with regard to Ms. Andino's argument, there's no clear error that she was not entitled to a minor role reduction. There was significant... The district court observed an eight-day trial and had a full understanding of where she stood in terms of her role in the conspiracy. Thank you, Your Honors. Thank you. That concludes argument in this case.